**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| GEORGE RICHARD DOWLER, #283-884    * | |
|     Plaintiff | |
|                                              * | |
| v. | CIVIL ACTION NO. RWT-04-3048 |
|                                              * | |
| MARY ANN SAAR, et al., | |
|     Defendants    * | |
|                                                ******* | |

## MEMORANDUM OPINION

On September 22, 2004, Plaintiff filed a civil rights complaint pursuant to 42 U.S.C. §1983, seeking money damages and injunctive relief. Counsel for Defendants has filed a dispositive motion (*see* Paper No. 21), which shall be treated as a Motion for Summary Judgment. Plaintiff has filed a response.[1] (Paper No. 34). No hearing is needed to resolve the question as to whether Plaintiff is entitled to money damages or injunctive relief in this case.[2] *See* Local Rule 105.6 (D. Md. 2004).

---

[1] In his response, Plaintiff catalogues problems with the administration of the Maryland Division of Corrections. Most of his complaints stem from his contention that the prisons are overcrowded. His complaints discuss among other things: rodent infestation; lack of adequate medical care; lack of recreation; inadequate vocational training/rehabilitation; and irregularities with the prison commissary and welfare system. (Paper No. 34). These allegations were not contained in Plaintiff's original Complaint. Accordingly, Defendants have not responded to these allegations and the Court shall not consider them. If Plaintiff believes that his constitutional rights have been violated as stated in his opposition to Defendants' dispositive motion, he is free to file a separate law suit.

[2] Several non-dispositive motions filed by Plaintiff remain pending. Plaintiff has filed a Motion to Amend the Complaint and Motions for Leave to File a Supplemental Complaint due to his being transferred to a new institution. (Paper Nos. 17, 31 and 42). He seeks to name the Warden of the new institution as a Defendant. The motions shall be denied. Any complaints regarding Plaintiff's current incarceration are not properly before the Court and as such it would be inappropriate to name the Warden of the facility wherein Plaintiff is now incarcerated as a Defendant in these proceedings. Plaintiff is of course free to file a separate law suit regarding the conditions of his current incarceration.

      Plaintiff has also filed two Motions for Protective Order. (Paper Nos. 35 and 36). He states that unnamed individuals have threatened to transfer him to another facility if he continues "complaining." He also states that Correctional Officer Yonkers has retaliated against him for complaining. In order to obtain injunctive relief under F. R. Civ. P. 65, Plaintiff must demonstrate: (i) the likelihood he will be irreparably harmed if the preliminary injunction is denied; (ii) the likelihood that defendants will not be harmed if the requested relief is granted; (iii) the likelihood that Plaintiff will succeed on the merits; and (iv) that the public interest will be served if the injunction is granted. Blackwelder Furniture Co. v. Selig Manufacturing Co., 550 F.2d 189, 195-96 (4th Cir. 1977); Yakus v. United States, 321 U.S. 414 (1944). Plaintiff's requests for injunctive relief shall be rejected in that his motions do not clearly establish that immediate and irreparable injury, loss, or damage would result to him if the requested relief is not granted. Moreover, his claims regarding retaliation and difficulties with Officer Yonkers are unrelated

**1. Factual Background**

Plaintiff contends that he has been denied special project credits (SPC) while double celled in violation of his right to equal protection. He also alleges, generally, that double celling constitutes cruel and unusual punishment. (Paper No. 1).

Plaintiff was convicted of a third degree sexual offense pursuant to Md. Ann. Code Art. 27 § 464(B), now codified at Md. Code Ann., Crim. Law § 3-307. His incarceration for this offense began on November 21, 1998. (Paper No. 21, Ex. 1). On April 14, 2003, Plaintiff was released from incarceration on mandatory supervision. (Id.) Plaintiff violated his mandatory supervision release by committing a carjacking. He returned to prison on June 27, 2003, and was housed at the Maryland Correctional Institution-Jessup ("MCI-J"). (Id.) Plaintiff was housed with another inmate while incarcerated at MCI-J. On December 2, 2004, Plaintiff was transferred from MCI-J to the

---

to his original complaint regarding failure of the Division of Corrections to award him SPC for double celling.

   Plaintiff's Motions for Copy Work (Paper Nos. 38 and 44) wherein he requests a copy of his original Complaint and Amended Complaints as well as a copy of the docket sheet shall be granted.

   Plaintiff's Motion to Remove Judge (Paper No. 41) shall be denied. The disqualification and recusal of a federal judge may be considered whenever a party to any proceeding files a sufficient affidavit stating that the judge before whom a case is assigned has a personal bias or prejudice either against that party or in favor of another party. *See* 28 U.S.C. § 144. A request for recusal must also be accompanied by a certificate stating that the motion is made in good faith. Id. Plaintiff has not filed an affidavit or certificate of good faith, nor has he demonstrated a need for recusal. There is no allegation of personal bias or prejudice caused by an extrajudicial source other than what the judge learned or experienced from his participation in previous cases filed by Plaintiff. United States v. Grinell Corp., 384 U.S. 563, 583 (1966); Fitzgerald v. Penthouse International, Ltd., 691 F.2d 666, 672 (4th Cir. 1982). Indeed, where, as here, the source of the bias is not shown to be "outside the record or a related proceeding or [related to the judge's] experience on the bench," it is not a sufficient basis for disqualification. Shaw v. Martin, 733 F.2d 304, 308 (4th Cir. 1984); United States v. Carmichael, 726 F.2d 158, 160 (4th Cir. 1984). Plaintiff's dissatisfaction with the undersigned judge's rulings does not establish cause for recusal.

   Plaintiff has also filed a Motion for Appointment of Counsel wherein he states that he suffers from psychological impairments which impede his ability to present his case. (Paper No. 43). A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. See Cook v. Bounds, 518 F.2d 779, 779 (4th Cir. 1975); see also Branch v. Cole, 686 F.2d 264, 266 (5th Cir. 1982). The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant. Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984). The Court finds from its review of the Complaint, response in opposition to Defendants' dispositive motion, and numerous pleadings filed by Plaintiff, that he is able to adequately articulate the facts and grounds for relief in the instant matter without difficulty. Furthermore, the Court concludes that Plaintiff's complaint is not of undue complexity. Therefore, despite Plaintiff's history of mental illness, the Motion shall be denied.

Maryland Correctional Training Center ("MCTC").  At MCTC Plaintiff was provided a single cell. (Id., Ex. 2).

Diminution credits can be earned by inmates to reduce the lengths of their confinements. Inmates in the custody of the Maryland Division of Correction, ("DOC") may earn good conduct credits, work or industrial credits, education credits, and special project credits. See Md. Code Ann., Corr. Serv.§§ 3-702 to 3-707.  Generally, an inmate may earn up to five credits in each category per month.  Id.   Under Md. Code Ann., Corr. Serv. § 3-707,[3] inmates in the custody of the Maryland Division of Correction ("DOC") may earn diminution credits of up to 10 days for participating in special selected work or other programs which have been designated by the Commissioner.  These are referred to as special project credits ("SPC").  Being housed under certain types of conditions has been designated as a special project entitling those subjected to those conditions to receive five days SPC per month.  See COMAR 12.02.06.05N(1).[4]  These are referred to as housing credits or double celling credits.  The regulation designating certain housing as a special project also provides that prisoners serving a term of confinement that includes sentences for certain types of convictions are **not** eligible for the credits even if they are housed in an area that meets the criteria.[5]

## 2. Standard of review

---

[3] § 3-707 was formerly Md. Code Ann., Art. 27, § 700(h).

[4] The conditions under which a prisoner ordinarily may be eligible for the credits are: voluntarily being double celled; being double celled in an institution which is under a court order to provide single cells or has a court imposed population cap which is exceeded; being double celled in a prison where the number of double cells exceeds the single cell design capacity; or being housed in a dormitory which does not provide for 55 square feet of living space per inmate.  C.O.M.A.R. 12.02.06.05N(2).

[5] Prisoners serving sentences for murder, rape, sex offenses, child abuse, drug trafficking or distribution, use of a firearm in the commission of a felony, a mandatory sentence for the commission of a felony, or a sentence as a repeat offender under Md. Ann. Code Art. 27, § 643B are not eligible for the credits.  C.O.M.A.R. 12.02.06.05N(1).
Plaintiff's contention that his third degree sex offense is not a crime of violence for purposes of parole or sentencing under Md. Ann. Code Art. 27, § 643B is inapposite as those statutory provisions do not control who is entitled to receive SPC for double celling.

3

A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).  In making this determination, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in his favor.  See Halperin v. Abacus Tech. Corp.,128 F.3d 191, 196 (4th Cir. 1997) (*citing* Anderson, 477 U.S. at 255).  The non-moving party may not rest upon mere allegations or denials in his pleading, however, but must set forth specific facts showing that there is a genuine issue for trial.  Anderson, 477 U.S. at 248; Allstate Fin. Corp. v. Financorp, Inc., 934 F.2d 55, 58 (4th Cir. 1991).  The "mere existence of a scintilla of evidence in support of...plaintiff's position" is not enough to defeat a defendant's summary judgment motion.  Anderson, 477 U.S. at 252.

**A.     Equal Protection and Due Process**

Plaintiff  asserts violations of his equal protection and due process rights protected by the Fourteenth Amendment as a result of the Maryland statutory provision which provides for the exclusion of prisoners convicted of certain offenses from eligibility for double-celling credits on their sentences.  Statutory regulations enacted as an attempt to alleviate prison overcrowding by allowing additional credits toward release to be granted to inmates who fall within its provisions have been determined to be rationally related to legitimate penological concerns.  See Shifrin v. Fields, 39 F.3d 1112, 1114 (10th Cir. 1994).  In the instant action, the Court finds that the exclusion of "violent" and "sexual" offenders, such as Plaintiff, from eligibility for double-celling credits on their sentences violates neither the Equal Protection Clause nor the Due Process Clause of the Fourteenth Amendment.[6]  While the Equal Protection Clause essentially directs "that all persons

---

[6] Plainly, the statutory language under § 3-707 makes clear that participation in such projects and programs is permissive (not mandatory), and that the projects and programs qualifying for such credits shall be designated by the Commissioner and approved by the Secretary of Public Safety and Correctional Services.

similarly situated should be treated alike," Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985), where as here, no suspect class or fundamental right is implicated, the government may treat groups of people differently without violating equal protection principles if it can demonstrate that its reasons for doing so bear some rational relationship to a legitimate state purpose. See Schweiker v. Wilson, 450 U.S. 221, 230 (1981); Vance v. Bradley, 440 U.S. 93, 96-97 (1979); San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 17 (1973). So long as the distinction is rational--as is the case with a distinction between prisoners convicted of different sorts of violent or predatory crimes--the federal courts do not second-guess its wisdom.

Maryland law denies double-celling SPC diminution credits to prisoners who have been convicted of crimes of violence and those convicted of sexual offenses. Because this statute serves a legitimate state interest in seeing to it that inmates with such a record serve more of their imposed sentences than non-violent offenders and is rationally based, the mere fact that different groups of people are subjected to disparate treatment, without more, does not amount to a violation of equal protection.[7] See Shifrin, 39 F.3d at 1114. Clearly, it is rational for the Maryland Governor and Legislature to believe that violent and/or sex offenders should not be eligible for early release, because they present a greater threat to society than non-violent/non-sexual offenders.[8]

As to Plaintiff's due process challenge, Plaintiff has no liberty interest in shortening his sentence through double-celling credits.[9] See Sandin v. Conner, 515 U.S. 472, 484 (1995).

---

[7] The Court notes that a challenge to the award of diminution credits provided to prisoners does not, in and of itself, give rise to a federal question. See Estelle v. McGuire, 502 U.S. 62, 66 (1991); Pringle v. Beto, 424 F.2d 515, 516 (5th Cir. 1970). Questions as to whether or not prison officials have properly credited Plaintiff with good conduct deductions do not inculpate federal law.

[8] This statute has been unsuccessfully challenged in this court in previous civil rights actions. See Vanegrift v. Taylor, 998 F.2d 1011, 1993 WL 281682 (4th Cir. July 28, 1993) (unpublished).

[9] To the extent that Plaintiff's cause of action raises a challenge to the length and duration of his confinement and can be construed as a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2241, it shall be dismissed without prejudice. It does not appear that Plaintiff has fully exhausted the claims raised here. See

**B.     Eighth Amendment Conditions Claim**

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). Conditions which are merely restrictive or even harsh, however, "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted). "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993). Prison officials cannot be held liable for violating the Eighth Amendment unless they knew of, and then disregarded, an excessive risk to inmate health or safety.[10] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The double-celling of prisoners does not amount to an Eight Amendment violation where other prison living conditions are constitutionally adequate. Rhodes v. Chapman, 452 U.S. 337, 347-350 (1981); Nelson v. Collins, 659 F.2d 420, 421 (4th Cir. 1981) (en banc); and Lopez v. Robinson, 914 F.2d 486, 493 (4th Cir. 1990). Although Plaintiff now contends that overall prison conditions at MCI-J and MCTC are inadequate in numerous respects (Paper No. 34), these

---

Braden v. 30th Judicial Circuit Court of Kentucky, 410 U. S. 484, 490-91 (1973).

[10]In their dispositive motion, Defendants address issues concerning Plaintiff's inability to urinate in front of his cell mate. Defendants correctly note that this issue was not raised by Plaintiff in any of his pleadings, although Plaintiff has picked up the discussion in his response to the dispositive motion. (Paper Nos. 21 and 34). As the issue of whether or not Plaintiff was medically cleared for double cell status is not properly before the Court, the undersigned will not it.

allegations were not made in Plaintiff's original submission and cannot now form the basis for Plaintiff's Eighth Amendment claim. Plaintiff challenged the constitutionality of his confinement solely upon the fact that he was housed with a cell mate. Such a challenge, in and of itself, does not state a constitutional claim.

### 3. Conclusion

Given the foregoing, Defendants are entitled to summary judgment in this case. A separate Order shall be entered in accordance with this Memorandum Opinion.

/s/
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE
